Carmine J. PERSICO, Jr., Petitioner,

v.

UNITED STATES DEPARTMENT OF
JUSTICE et al., Respondents.

Civ. No. 753087.

United States District Court,
E. D. Illinois.

Feb. 1, 1977.

James Coghlan, Coghlan & Joyce, William J. Martin, Chicago, Ill., Marc A. Rosenberg, Garden City, N. Y., Louis James Morse, Washington, D. C., Roger Scrivner, Belleville, Ill., for petitioner.

Timothy J. Gifford, Asst. U. S. Atty., East St. Louis, Ill., for respondents.

## ORDER

FOREMAN, District Judge:

Carmine J. Persico filed a Petition for Writ of Habeas Corpus challenging the Bureau of Prisons' assignment of "special offender" and "original jurisdiction" designations to his case without first providing him with notice and a hearing. Petitioner also challenges actions on the part of the United States Board of Parole[1] claiming that he has been denied meaningful parole consideration, that the reasons for his parole denial were inadequate, and that the application of the Parole Guidelines to his case was improper. Finally petitioner challenges the denial of access to certain information in his files.

Based upon the pleadings as well as testimony given during hearings held at the United States Penitentiary at Marion, Illinois and at United States District Court at Benton, Illinois, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Petitioner, Carmine Persico, is presently incarcerated in the United States Penitentiary at Marion, Illinois pursuant to a fourteen year sentence imposed in June of 1969 by the United States District Court for the Eastern District of New York. Petitioner began serving his sentence on January 27, 1972. Parole eligibility was entrusted to the United States Board of Parole pursuant to 18 U.S.C. Section 4208(a)(2). A special progress report issued in April of 1975 describes petitioner's institutional adjustment as "good" and his conduct record as "clear".

Petitioner's initial parole release application was considered by the Board of Parole on September 18, 1972. On October 11, 1972, a determination was made to continue his case for review in April of 1975.

On or about March 28, 1975, prior to the date for his parole hearing, petitioner filed an administrative request to the Bureau of Prisons for all pertinent information in his files. Petitioner's request for this information was denied in part on August 11, 1975, with Title 5 U.S.C. Section 552 stated as the reason for this denial. Petitioner appealed to the Deputy Attorney General under the Freedom of Information Act and he received an affirmance of the Bureau's partial denial on April 21, 1976.

Petitioner filed a Motion in the United States District Court for the District of Columbia requesting that the Board of Parole be enjoined from conducting his parole release hearing until they had fully complied with petitioner's request for information. Said Motion was subsequently transferred to this Court where it was mooted when an institutional review hearing was conducted by an examiner panel on April 3, 1975. Pursuant to 28 C.F.R., Section 2.17 the Regional Director referred Persico's case to the National Directors for original jurisdiction consideration on April 14, 1975.[2] On April 28, 1975 petitioner's case was con-

---

1. The United States Board of Parole has been renamed the United States Parole Commission. See The Parole Commission and Reorganization Act, Pub.L. 94–233, 90 Stat. 219 *et seq.*

2. The designation of a case as original does not reflect a judgment by the Board as to the merits of the inmate's application for parole. A decision to so designate is made by the Board of Parole independent of any decision on the part of the Bureau of Prisons to designate the inmate as a special offender. While in the normal case the authority to make an initial parole decision is delegated to the hearing examiners; the referral has the immediate effect of bringing the case before the National Directors for the initial decision in original jurisdiction cases.

tinued by the National Directors for consideration in April of 1978.[3]

In a written statement prepared by the Board of Parole, petitioner was provided with the following reasons for the Board's decision outside the Guidelines denying him parole.

Your offense behavior has been rated as very high severity. You have a salient factor score of 5. You have been in custody a total of 38 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of 45–55 months to be served before release for cases with good institutional program performance and adjustment. After careful consideration of all relevant factors and information presented, it is found that a decision outside the Guidelines at this consideration appears warranted. There is not a reasonable probability that you would live and remain at liberty without violating the law because of your long criminal history. Board policy limits a continuance to not more than 36 months without review. Your continuance has been limited by this policy. Your offense was part of a large scale or organized criminal conspiracy or an ongoing criminal enterprise. An unusually sophisticated or professional manner was evident in the planning or commission of the offense. It is believed that you are a poorer parole risk than indicated by the salient factor score.

Sometime prior to his 1975 parole hearing petitioner was designated by the Bureau of Prisons as a "special offender" or, under the new Bureau Policy Statement, a "central monitoring system case". 225 of the 504 inmates incarcerated at the United States Penitentiary at Marion, Illinois are designated as central monitoring system cases.[4]

The purpose of the Central Monitoring System is to identify and tabulate information on certain categories of offenders who require greater case management supervision than the usual case. The system is designed to control the transfer and community activities of those special inmates. These controls affect an inmate's access to or opportunity for furlough and visitation privileges as well as camp, farm or minimum security assignments. There is a reluctance on the part of prison officials to submit progress reports to the Board of Parole on prisoners designated as special offenders. Once the special offender status is assigned, it remains with the inmate as long as he is incarcerated. Testimony at the hearing indicated that the possibility of release from the designation was "extremely difficult" and "highly improbable". Petitioner's designation as a special offender was assigned without prior notice or hearing.

## CONCLUSIONS OF LAW

### I

The heart of petitioner's complaint concerns a challenge to his designation as a central monitoring system case by the Bureau of Prisons without first providing him with procedural due process. In *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976) the United States Court of Appeals for the Seventh Circuit held that due process attaches to the special offender classification. The Court rejected the Government's argument that even assuming the special offender designation does result in denial of furlough, transfer, or parole, such a result does not require due process because no prisoner possesses a "right" or "entitlement" to these conditions

---

**3.** This continuation extends petitioner's length of incarceration beyond the maximum suggested by the Parole Guidelines for a prisoner with an offense behavior rating, salient factor score, and institutional performance similar to that of petitioner. In addition, the continuance corresponds to petitioner's expected mandatory release date, April 28, 1978.

**4.** At the second hearing held at the United States District Court at Benton, Illinois, peti-

tioner argued that only 500 federal inmates were classified as central monitoring system cases. Respondents represented that in April, 1976, 1700 individuals were designated as central monitoring system cases and that in November 1976, 2500 inmates were so designated. Neither figure was officially introduced into evidence.

of confinement.[5] The procedural safeguards required in *Holmes*, include: (1) a written notice prior to any classification containing a brief description of the evidence upon which the intended designation is based, (2) an administrative hearing on the issue of the inmate's contemplated designation; (3) the appointment of a hearing officer who has no personal knowledge of the basis of the inmate's suggested designation; (4) the opportunity to confront and cross examine witnesses subject to the hearing officer's discretionary powers to limit for time or risk reasons; (5) access to other prisoners for the purpose of collecting documentary evidence subject to the discretion of the hearing officer; (6) the right to retained counsel if the issues are so complex or any other circumstance exists which renders the inmate unable to collect or present his evidence; (7) the submission to the Board of Parole of the written findings by the hearing officer if it is determined the designation is warranted; and (8) the opportunity for review of a hearing officer's decision to designate by the Chief of Classification and Parole, by the Warden, and finally by the Bureau of Prisons.

The relief granted in *Holmes* required the expungement of the special offender classification from all records and files of the petitioner maintained by the institution. Defendants were further enjoined from reclassifying Holmes without first affording him a hearing within 30 days of any decision to reclassify him. All privileges which had been denied as a result of his designation were restored and defendants were ordered to "remove any institutional sanctions attendant to the special offender classification." Finally, the Court in *Holmes*

included provisions for affording the petitioner a new parole hearing.

This Court is now faced with the task of deciding whether to apply *Holmes* retroactively to the present case. In resolving this question this Court notes *Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975). In *Cardaropoli*, the cases of seven inmates were consolidated as to their claims that they had been designated as special offenders without prior notice and a hearing. On October 17, 1974, the District Court granted relief and the Court of Appeals affirmed on September 29, 1975. Identical relief had been previously granted by the same District Court on October 9, 1974 in an unrelated case. See *Catalano v. United States*, 383 F.Supp. 346 (D.Conn.1974). Although the issue of retroactivity was not specifically raised in either opinion, the United States District Court for Connecticut did apply *Catalano* retroactively with affirmance from the Second Circuit.

Decisions concerning retroactivity take into account the following factors: 1) the purpose to be served by the new standards, 2) the extent of reliance by law enforcement officials on the old standards; and 3) the effect which retroactive application of the new standard might have on the administration of justice. See *Stovall v. Denno*, 388 U.S. 293, 297–300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Bailey v. Holley*, 530 F.2d 169 (7th Cir. 1976). Moreover, as the Supreme Court pointed out in *Wolff v. McDonnell*, 418 U.S. 539, 574, 94 S.Ct. 2963, 2983, 41 L.Ed.2d 935 (1974).

> "[I]n the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the sig-

---

**5.** But see *Moody v. Daggett*, 429 U.S. 78, 88, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (footnote 9):

> Petitioner also argues that the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs. We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 for example, no due process pro-

> tections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement. 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

nificant impact a retroactivity ruling would have on the administration of all prisons in the country, and the reliance of prison officials, in good faith, on prior law not requiring such procedures."

Here, the important purpose to be served by the new standard is the development of adequate fact finding procedures and fairness in the utilization of these fact finding procedures to determine whether an inmate should be designated as a central monitoring system case, a designation which leads to the loss of liberty and privilege interests. The loss suffered by an inmate in such cases is not a one-time loss; but continues so long as an inmate remains classified. As previously noted, once an inmate is designated as a special offender, he is unlikely to be relieved of the assignment at some future date. Therefore it is likely that petitioner will continue to suffer the loss of liberty and privileges noted in *Holmes* pending his release from custody. For these reasons, this Court feels that unless reliance upon the old rule is so great that the accompanying difficulties in the retroactive administration of justice forbid; it is important that some avenue of relief be made open to the petitioner.

Although national figures concerning the number of federal prisoners designated as special offenders have not been entered into evidence; the Court did hear evidence that 225 of 504 inmates at Marion Penitentiary, where Petitioner is incarcerated have been so designated. There is little doubt that the Department of Justice, as well as the institutional authorities at Marion, have relied upon the old rule in as much as they have not been granting notice and hearings to those individuals. It is true, however, that the Bureau of Prisons has been working toward the relief recently promulgated by the Seventh Circuit Court of Appeals in as much as the Bureau's most recent Policy Statement, defendant's exhibit #2, provides for notice with reasons of an intended special offender designation, the opportunity for written or oral response by the inmate, notification of the Bureau's decision, and the opportunity for inmate appeal to the Bureau.

Although ordering the retroactive application of *Holmes* to petitioner's case does not on its face place an unreasonable burden on prison officials or the Board of Parole, this Court cannot ignore the fact that the ramifications of a retroactive application of *Holmes* might in essence require prompt notice of designations, special offender hearings and parole hearings in nearly 225 cases at the United States Penitentiary at Marion alone.[6] Therefore, after weighing those factors this Court feels it necessary to afford petitioner a remedy while at the same time allowing the Bureau of Prisons and the Board of Parole the time necessary to make the transition toward compliance with the Seventh Circuit decision.

The Bureau of Prisons is not ordered to expunge from petitioner's record his special offender designation; but instead must grant petitioner notice and a hearing in accordance with the Seventh Circuit mandate within three months of a written request for such a hearing from the petitioner. If petitioner is granted a special offender hearing within the three month period following his request and the designation is removed petitioner is entitled to a new parole hearing within three months of that decision. If the designation is not removed no new parole hearing is necessary.

If petitioner is not given a hearing within the three month period, the Bureau of Prisons is ordered to expunge from petitioner's record the special offender designation. Petitioner will then be entitled to a new parole hearing within six months of his request for a hearing on the special offend-

---

**6.** This case is distinguishable from *Wolff v. McDonnell, supra.* The Court in *Wolff* noted that during 1973 alone the federal government conducted 19,000 misconduct hearings. Providing a retroactive application of that rule could have required even hearings on alleged disciplinary infractions occurring many years ago. Therefore, the resulting administrative burden of a retroactive application in *Wolff* was much greater than the evidence introduced shows the burden in the present case to be.

er status, unless prior to the expiration of the six month period he is redesignated "special offender" or "central monitoring system" case in compliance with *Holmes, supra.*

## II

Petitioner next challenges the Board of Parole's designation of his case as "original jurisdiction" without first affording him the protection of minimal due process.

The uncontested introduction of respondents' exhibit #5 leads this Court to find that the special offender and original jurisdiction designations are made separately, with the possibility of the assignment of one without the other. Petitioner is therefore in essence claiming that the original jurisdiction designation constitutes a grievous loss separate and distinct from the special offender designation. There has been no showing, however, that petitioner has been denied any privileges or rights as a result of his original jurisdiction designation. No evidence introduced supports a finding that petitioner was denied rights in an en banc hearing that are normally afforded inmates who receive a regular parole hearing. In addition, petitioner has failed to show that inmates whose cases are designated as original jurisdiction are less likely to be released than inmates not so designated.

Petitioner has failed to sustain his burden of showing a legitimate statutory or constitutional entitlement sufficient to invoke due process with respect to his original jurisdiction designation. As a result, petitioner's claim with respect to this designation is hereby DENIED.

## III

As previously noted, petitioner was sentenced under 18 U.S.C. Section 4208(a)(2). As a result he is entitled to meaningful parole consideration before the expiration of one third of his sentence. *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974). Although the timeliness of petitioner's parole hearing is not at issue here, petitioner is claiming that his parole release application was not given meaningful consideration by the Board of Parole Examiners. Petitioner attributes this denial of meaningful consideration primarily to what he views as the Board's failure to consider his institutional performance in the making of its parole release decision. In addition the record reveals that petitioner believes his "special offender" and "original jurisdiction" designations may also have been additional factors effective in making his parole consideration meaningless, suggesting perhaps a predisposition on the part of the Board members toward a decision denying parole.

Petitioner's dissatisfaction with the Board of Parole's decision to deny him parole is understandable; however judicial review of this decision is ordinarily not available. *Juelich v. United States Board of Parole*, 437 F.2d 1147 (7th Cir. 1971); *Brest v. Ciccone*, 371 F.2d 981 (8th Cir. 1967). The Board of Parole is necessarily given great discretion in making its parole release decisions. Courts lack both the expertise and the resources to become involved in this area. As a result judicial involvement is appropriate only when a denial of parole is clearly in violation of a prisoner's constitutional rights. See *Farries v. United States Board of Parole*, 484 F.2d 948 (7th Cir. 1973).

In petitioner's case, the Parole Board's decision to deny parole in the face of a favorable institutional record in no way suggests or establishes that petitioner's record was disregarded. Prison conduct is only one of the factors considered in parole release decisions; and the necessity of taking other factors into account has often been recognized by the Courts. More specifically, a prisoner's prior criminal record, his need for further institutionalization, or the likelihood of his engaging in further criminal activity upon release have been recognized as legitimate considerations in the making of parole release decisions denying parole despite a good institutional record. *McGee v. Aaron*, 523 F.2d 825 (7th Cir. 1975). This holds true even in cases such as petitioner's where the inmate was

sentenced under 18 U.S.C. Section 4208(a)(2). Even *Garafola v. Benson, supra,* the case establishing the meaningful parole consideration requirement, unquestionably recognizes that both impressions and evaluations drawn from the Board hearing are valid decision making considerations which are to be evaluated in addition to institutional performance.

The Parole Board's decision to deny parole to an inmate whose case has been designated as "original jurisdiction" does not establish that such denial was based upon such a designation, therefore depriving petitioner of meaningful consideration. Petitioner must introduce evidence showing that the Board is ordinarily predisposed to deny parole in such cases, or at least that such prejudice, despite general practice, did occur in petitioner's case. Without such evidence petitioner has given this Court no reason to believe that the Board of Parole allowed such designations to prejudice petitioner's case in violation of his constitutional rights.

The "special offender" designation, however, stands on a different footing than the "original jurisdiction" classification because of the language in *Holmes v. United States Board of Parole, supra,* that it is "untenable" to suggest that special offender classification plays no part in the parole decision. The Court's decision in Part I of this memoranda order obviates the necessity of granting any further relief in this case. In granting retroactive effect to the *Holmes* decision, petitioner will be granted a new parole hearing if the special offender designation is removed. Petitioner's claim with respect to this issue is hereby DENIED.

## IV

Due process requires that prisoners be supplied with reasons for a decision by the Board of Parole to deny parole. *King v. United States,* 492 F.2d 1337 (7th Cir. 1974); *Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975). When, however, the denial of parole results in an extension of incarceration beyond the time called for under the Guidelines, it is reasonable to require the Board to supply the prisoners with an additional or expanded statement of reasons. See *Garcia v. U. S. Board of Parole,* 409 F.Supp. 1230 (N.D.Ill.1976) and *Devyver v. Warden, U. S. Penitentiary,* 388 F.Supp. 1213 (M.D.Pa.1974).

In the present case petitioner was not only informed of the Board's conclusion that he was a poorer parole risk than his salient factor score indicated; he was also given an indication of the factual basis, namely his past criminal record and his connection with organized crime, from which the Board's conclusions were drawn. See *Robinson v. United States Board of Parole,* 403 F.Supp. 638 (W.D.N.Y.1975). This statement of reasons, in the opinion of this Court, meets the due process requirements as set out in the aforementioned cases for both a general denial as well as a denial of parole extending incarceration beyond the time called for under the Guidelines. The Guidelines, it is important to remember, were only meant to be guidelines, and as such the Board is free to render a decision either above or below the Guideline range where, in the opinion of the Board, circumstances warrant. *Garcia v. U. S. Board of Parole,* 409 F.Supp. 1230 (N.D. Ill.1974). The Board of Parole is given great discretion in the making of such decisions and it is not within the Court's power to question the Board's determinations.

Petitioner's challenges as to the extension of his incarceration beyond the Guideline period as well as the reasons accompanying that decision are hereby DENIED.

## V

Petitioner's final challenge alleges that he was denied access to certain information in his files relevant to the Board's determination of his case. Petitioner makes mention in his petition that his claim is brought under the Freedom of Information Act, U.S.C.A. Title 5, Section 552; as well as the Due Process Clause of the Constitution.

Petitioner is unclear, however, as to which agency, the Board of Parole or the Bureau of Prisons, he claims has so denied

him access. Petitioner alleges in his complaint that his request for information was made to the Board of Parole on March 28, 1975. Evidence introduced at trial, namely, petitioner's exhibit B, shows only that petitioner made a Request for Administrative Remedy with the Federal Bureau of Prisons. He has therefore alleged a request for information from the Board of Parole without showing such a request was made; whereas he has made a showing of such request to the Bureau of Prisons without so alleging. In addition, petitioner is unclear as to whether the one request made was done so pursuant to his claim under the Freedom of Information Act, the Due Process Clause, or both.

As it stands, the Court chooses to treat briefly each of the four possible interpretations of petitioner's complaint: (1) a due process claim against the Board of Parole, (2) a due process claim against the Bureau of Prisons, (3) a Freedom of Information Act action against the Board of Parole, and (4) a Freedom of Information Act action against the Bureau of Prisons.

First, a due process claim cannot stand with respect to the Board of Parole; for petitioner has failed to show that a request for information was made thereto. Obviously, if petitioner did not make a request, he cannot claim that it was a denial of due process to be denied that request.

Secondly, although inadequately pled, it appears petitioner has attempted to allege that a request for information made to the Bureau of Prisons was unjustifiably denied, at least in part. Should this be the case, it is the opinion of this Court that petitioner will receive an adequate remedy once compliance with this Court's decision requiring the disclosure of information relevant to petitioner's special offender designation, is had. Aside from this remedy, this Court is unaware of any information required to be revealed by the Bureau of Prisons on due process grounds.

It is true that petitioner may have a valid claim for information, from either the Board of Parole or the Bureau of Prisons, under the Freedom of Information Act. It is, however, the feeling of this Court that petitioner has incorrectly attempted to bring a Freedom of Information Act claim within a Title 28, Section 2241 action.[7] Habeas Corpus relief would not be appropriate in such a case.

### CONCLUSION

The Bureau of Prisons is ordered to provide petitioner with due process in accordance with *Holmes v. United States Board of Parole, supra,* within three months of a written request for such a hearing from the petitioner. If petitioner is granted a special offender hearing within the three month period following his request and the designation is removed; petitioner is entitled to a new parole hearing within three months of that decision. If the designation is not removed, no new parole hearing is required.

If petitioner is not given a hearing within the three month period, the Bureau of Prisons is ordered to expunge from petitioner's record the special offender designation. Petitioner will then be entitled to a new parole hearing within six months of his request for a hearing on the special offender status unless he has been redesignated during the six months in compliance with the procedures mandated by *Holmes v. United States Board of Parole, supra.*

In all other respects, petitioner's claims for relief are DENIED.

IT IS SO ORDERED.

---

**7.** The Court makes no judgment as to whether the action would properly be brought under Title 5, § 552 or § 552a.