Leonard **SHELTON,** Petitioner-Appellant,

v.

Larry **TAYLOR,** Warden, and Maurice Sigler, Chairman, United States Board of Parole, Respondents-Appellees.

No. 651, Docket 76–2099.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1977.

Decided Feb. 22, 1977.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

John M. O'Connor, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., Southern District of New York, New York City, on the brief), for appellees.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Leonard Shelton appeals from an order by Judge Knapp of the Southern District dismissing his habeas corpus petition for lack of jurisdiction. Appellant argues that jurisdiction is available because he was in federal custody in the Southern District at the time he filed the petition and the custodian United States Parole Commission is present in the Southern District. He seeks relief on the ground that his failure to receive a federal parole revocation hearing until after he had completed his state prison term for the state offense that constituted a violation of his federal parole was contrary to due process. We conclude that the Southern District of New York had jurisdiction, but we affirm because the prejudice alleged is too minimal and speculative to warrant relief.

On February 1, 1968, Shelton was sentenced by the District Court for New Jersey to ten years' imprisonment for bank robbery. On November 23, 1970 he was released on parole.

Shelton was arrested by New Jersey authorities on July 19, 1971 and charged with armed robbery. As a consequence, the United States Board of Parole issued a parole revocation warrant on July 23 and on July 28 lodged a detainer with the New Jersey correctional officials. In November, Shelton pleaded guilty to robbery and, on December 21, 1971, he began serving a sentence of six to eight years in state prison at Leesburg, New Jersey. On January 11, 1972 the state prison authorities informed

Shelton that a federal detainer had been lodged against him.[1]

Beginning in March or April 1972 and during the ensuing three years, Shelton made several written requests that his parole violation sentence be allowed to run concurrently with his state term of imprisonment or that the detainer be withdrawn. Although the United States Board of Parole received favorable reports from state prison authorities at Leesburg, it denied Shelton's requests without explanation.

During his state incarceration Shelton compiled an exemplary record. He performed well at his prison job, became a member of Alcoholics Anonymous, earned an associate's degree in community service with a B average after two years of courses in the prison education program sponsored by local community colleges, and was considered friendly and well-motivated by teachers and prison authorities. In spring 1975 he could have continued his education through a study release program, but having a detainer lodged against him precluded this.

Shelton was granted parole from his state conviction on September 8, 1975—a year and a half after the earliest date he might have been eligible—and was released into the custody of federal officials, who brought him to the Metropolitan Correctional Center in Manhattan. Ten days later he was informed by federal probation officials that he might be returned to the penitentiary at Lewisburg, Pennsylvania—where he had served his bank robbery term originally. Shelton, however, requested that a revocation hearing be held locally.

On October 16, 1975 Shelton filed a habeas petition in the Southern District[2] asking for a prompt local revocation hearing and for his re-release on parole on the ground that the four-year delay without any revo-

cation hearing had denied him due process. After oral argument Judge Knapp suggested that the local revocation hearing be granted since the Board of Parole was scheduled to meet at the Metropolitan Correctional Center on November 4, a full month before their next meeting at Lewisburg.

At the hearing before the Board of Examiners on November 4, where Shelton was represented by the Legal Aid Society, his good record in the prison educational program was further documented through letters from teachers and administrators and through testimony by Shelton's education advisor. Also, Shelton explained that he had committed the state robbery only after being threatened and pistol-whipped by loan sharks, and that he had used only a toy gun.

The Board of Examiners revoked parole but said that Shelton should be re-paroled on January 20, 1976. On November 28, 1975 the Board of Parole affirmed; and Shelton was re-paroled on January 20 with parole supervision in New Jersey.

After further briefing and argument on the due process claims, Judge Knapp dismissed the petition on August 4, 1976, finding that he had no jurisdiction under 28 U.S.C. § 2241 over the detainer or its consequences since both the lodging of the detainer and the imposition of the original federal sentence had occurred in New Jersey.

 We disagree with the district court's jurisdictional holding. When both the challenged custody and the custodian are within the same district, habeas corpus jurisdiction is clearly available there. See *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Parole or subsequent removal of the petitioner from the

---

1. It is not clear from the record whether Shelton was aware of the Board's action before January 11, 1972.

2. In October 1974, Shelton had filed a federal habeas corpus petition in the District of New Jersey seeking a prompt parole revocation hearing or removal of the federal detainer.

This petition appears to have been denied on the merits at roughly the same time as Shelton's later filing in the Southern District of New York.

state does not divest the court of its jurisdiction if the respondent is still present in the district. See *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Ex parte Endo,* 323 U.S. 283, 306, 65 S.Ct. 208, 89 L.Ed. 243 (1944). Thus, jurisdiction was available in the Southern District of New York even though it was not the situs of the detainer or the original federal sentencing. Although the government suggests the district court might properly have abstained from exercising jurisdiction on discretionary grounds, cf. *Bijeol v. Benson,* 513 F.2d 965, 968 (7th Cir. 1975), this was not the basis expressed for Judge Knapp's decision.

The merits on this appeal must be considered in light of the Supreme Court's decision in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), decided subsequent to the district court's decision. Moody was on parole from a federal conviction when he committed a new federal crime. On incarceration for the new crime and issuance of a warrant and detainer for the parole violation, he unsuccessfully asked the Board of Parole for an immediate parole revocation hearing in order that any imprisonment imposed for violation of parole might run concurrently with his new sentence. Moody then sought habeas corpus. On certiorari the Supreme Court held that a parole revocation hearing was not required until the petitioner was actually imprisoned for the parole violation, because before that time no protected liberty interest was affected by the possibility of future incarceration for the parole violation.

The *Moody* Court noted that under 18 U.S.C. §§ 4211, 4214 as amended in 1976, the Parole Commission has power to grant the equivalent of concurrent sentences retroactively,[3] and that thus the deferral of the revocation decision did not deprive Moody of the opportunity to have his parole violation sentence run concurrently with his intervening sentence. In rejecting Moody's

argument that the issuance of a parole violator warrant could unfairly prejudice his chances for parole on his intervening sentence, the Court relied on the fact that Moody would have the same opportunity to address the Parole Commission in his parole eligibility hearing as he would have had in a parole revocation hearing. In response to Moody's argument that the pending warrant and detainer adversely affected his prison classification and qualification for institutional programs, the Court found that federal prisoners have no legitimate statutory entitlements with respect to these matters over which federal prison officials have "full discretion." [4]

Shelton attempts to distinguish his case from *Moody* on several grounds. First, he asserts that at the time of his revocation hearing in November 1975, the Board of Parole was operating under the assumption that it did not have the power to grant retroactive credit to parole revokees for time served in state prison. Hence, he infers that the postponement of his revocation hearing until the end of his state prison term did destroy his chances of having his federal sentence run concurrently with his state imprisonment. From this he concludes that an earlier hearing was required as a matter of due process.

■ At best, this argument might warrant our ordering the Parole Commission to grant Shelton a fresh hearing on whether he should be allowed retroactive credit. For a combination of reasons, however, we find Shelton's claim of prejudice to be too speculative to justify such relief. As they existed in 1975, 18 U.S.C. §§ 4205, 4207 and regulations thereunder, 28 C.F.R. § 2.53, could be read to imply that the Board had no power to award concurrent credit for time already served in state prison prior to revocation, see *Mock v. U. S. Board of Parole,* 120 U.S.App.D.C. 248, 345 F.2d 737, 739 (1965); *Gaddy v. Michael,* 384 F.Supp.

---

**3.** See also 18 U.S.C. § 4210(b)(2). The Parole Commission is the Board of Parole's successor under the new legislation.

**4.** See, e. g., *Harris v. Settle,* 322 F.2d 908 (8th Cir. 1963), cert. denied, 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964).

1390, 1393 (W.D.N.C.1974); Senate Report No. 94–369 at 17–18, in 1976 U.S.Code Cong. & Adm.News p. 571, or they could be read to imply that the Board did have such power, see *Robb v. Norton,* 394 F.Supp. 856, 858–59 (D.Conn.1975); *Sadler v. United States,* 313 F.2d 106 (10th Cir. 1963) (by implication). Thus, it is possible that the Board did consider granting Shelton retroactive credit at the November 1975 hearing but decided not to extend him such a benefit. The Parole Commission has a general policy against awarding concurrent credit. See 28 C.F.R. § 2.47(c). In view of the Board's November 1975 decision to require Shelton to serve additional time in federal prison after his release from state prison, it seems unlikely that the Board would have considered Shelton's case to be one that called for concurrent terms. Moreover, Shelton is still free at any time to ask the Commission to terminate his parole supervision. See 18 U.S.C. § 4211(a).[5] The Commission is required at its own initiative to conduct such a review after two years of parole and after each additional year, 18 U.S.C. § 4211(b), and in reaching a decision on termination the Commission will have before it all the mitigating facts adduced at Shelton's November 1975 hearing. Accordingly, there is insufficient basis for us to order a hearing at this point.

■■■ Shelton's second argument is that his release on parole by New Jersey officials may have been delayed by the detainer. Parole eligibility is an entitlement that is protected by due process. *Zurak v. Regan,* 550 F.2d 86 at 92 (2d Cir. 1977); *United States ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925, 928 (2d Cir.), vacated and remanded as moot sub nom. *Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). Unlike *Moody* this is not a case where the

board that would decide whether to revoke parole on the first sentence was the same as the board that could decide to parole the prisoner from the second sentence. Thus, the federal parole board's decisions not to lift the detainer and not to let Shelton's parole violation sentence run concurrently with his state sentence may have been held against him when he was being considered for parole by the state authorities.[6] *See Shepard v. United States Board of Parole,* 541 F.2d 322 (2d Cir.) judgment vacated, ——— U.S. ———, 97 S.Ct. 779, 50 L.Ed.2d 773 (1977). Whatever the merits of such a claim in other circumstances, Shelton's claim here proceeds on a series of unwarranted assumptions and speculations. We will assume for the moment that the detainer was a material, negative factor in the state parole board's decision not to grant parole. But Shelton also asks us to assume that the federal parole board might have removed the detainer if an earlier hearing had been held. He then asks us to direct the board to give him full credit for the time he served on his state sentence. Yet at the parole revocation hearing that was held, the federal board had the option of giving Shelton full credit for the time served. It chose not to do so, but instead extended Shelton's period of incarceration; and it did this at a time when it had Shelton's excellent state institutional record before it. We therefore see no basis for assuming that Shelton was prejudiced by the delay in his hearing.

■■■ Shelton also asserts that he had a legally protected interest in participating in the education release program, which was prejudiced by the outstanding federal detainer. Under New Jersey law, decisions, by prison authorities regarding prison classifications, privileges, and assignments can be reviewed in court if they are arbitrary

---

**5.** 18 U.S.C. § 4211(a) is a new provision. Before the 1976 amendments, the Board had no clear statutory authority to terminate parole supervision early.

**6.** Under this argument, it would not violate due process for the federal Parole Board to have *no*

discretion to decide parole revocation issues prior to termination of state incarceration, but it does violate due process for it to have this discretion without granting the inmate an opportunity to be heard.

and capricious. See *State v. Clark,* 54 N.J. 25, 252 A.2d 720 (1969); *State v. Rydzewski,* 112 N.J.Super. 517, 271 A.2d 907 (App.Div. 1970); *McBride v. McCorkle,* 44 N.J.Super. 468, 130 A.2d 881, 885 (App.Div.1957). Apparently, New Jersey also has a per se rule that prisoners with detainers outstanding against them cannot be considered for prison release programs. Thus, Shelton argues that in destroying his eligibility for the education release program, the federal detainer did deprive him of a constitutionally cognizable entitlement. *Cf. Shepard v. United States Board of Parole, supra,* slip op. at 5420–21.

■ In Shelton's case, however, we need not decide whether indirect effects on eligibility for state parole or education release should trigger the right to due process at an earlier stage than that specified in *Moody.* It would be unreasonable for the court now to order the New Jersey authorities to reconsider Shelton's case. Nor would a quid pro quo reduction of Shelton's remaining sentence be justified; the prejudice alleged is too remote and speculative, particularly since the likely outcome of any earlier revocation hearing would have been to let the federal detainer stand until the end of Shelton's state imprisonment. Accordingly, Shelton has no present claim for relief.[7]

For the foregoing reasons we affirm the judgment of the district court which denied appellant's petition.

---

**7.** Shelton also complains that after issuing the parole revocation warrant the Board failed to advise him to present all relevant mitigating evidence. However, any prejudice from this alleged oversight was redressed through the subsequent hearing in November 1975.