Nimrod T. SOLOMON,
Petitioner-Appellee,

v.

Charles L. BENSON, Warden, et al.,
Respondents-Appellants.

No. 76–1959.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1976.

Decided Oct. 6, 1977.

James B. Young, U. S. Atty., Indianapolis, Ind., Patrick Glynn, Dept. of Justice, Washington, D.C., for respondents-appellants.

Glenn E. Gutsche, Chicago, Ill., Nimrod T. Solomon, for petitioner-appellee.

Before PELL and WOOD, Circuit Judges, and GORDON, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The question raised in this appeal is whether a federal prisoner is entitled to a due process hearing prior to being labeled as a special offender.[1]  Although this court

---

* The Honorable Myron L. Gordon, United States District Court for the Eastern District of Wisconsin, is sitting by designation.

1.  18 U.S.C. § 4081 governs the classification and treatment of prisoners:

The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

The general power over classification and treatment of prisoners has been delegated to the bureau of prisons pursuant to 28 C.F.R. § 0.95(d).  Pursuant to this authority, the special offender classification was created by Bureau of Prisons Policy Statement No. 7900.47 (April 30, 1974).  Bureau of Prisons Policy Statement No. 7900.47 provides in part:

DISCUSSION.  A comparatively small proportion of the inmate population presents special prison management problems, and require special handling.  This includes offenders whose offense, background, or activities during or related to confinement suggest the need for especially close supervision to avoid situations which would result in undue adverse public reaction or would represent a threat to a particular inmate, the institution, or the community.

POLICY.  It is the policy of the Bureau of Prisons to maintain a record of Special Offenders in the Central Office, Washington, D.C. to control the transfer and community activities of inmates who pose special management problems.  Inmates who fall into the categories stipulated in this Policy Statement may not be transferred or approved for any community activities without prior approval from the Central Office, Correctional Programs Division.

Bureau of Prisons Policy Statement No. 7900.47 sets forth eight categories of special offenders.  Petitioner was classified as a special offender pursuant to category No. 2 be-

recently concluded in *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976), that a due process hearing is required, the Government urges that we reconsider that decision in light of the Supreme Court's ruling in *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Upon reconsideration of this question, we conclude in light of *Moody* that for the following reasons *Holmes* must be overruled to the extent that procedural due process was held to apply to classification as a special offender.

Briefly, the facts are as follows:

Petitioner-Appellee Nimrod T. Solomon (hereinafter referred to as petitioner) was sentenced to two consecutive prison terms of ten years following two jury trial convictions. Petitioner was first convicted on June 17, 1968, for conspiracy and transportation of forged securities in violation of 18 U.S.C. §§ 371 and 2314. On April 24, 1970, petitioner was also convicted under a separate indictment for counterfeiting, concealing, selling, transferring and receiving United States Treasury Notes. See *United States v. Solomon*, 468 F.2d 848 (7th Cir. 1972), *cert. denied*, 410 U.S. 986, 93 S.Ct.

1513, 36 L.Ed.2d 182. Petitioner was incarcerated at the Federal Correctional Institution at Terre Haute, Indiana. Pursuant to Bureau of Prison Policy Statement No. 7900.47, petitioner was classified as a special offender because of his association with organized crime.

Upon serving one-third of the two sentences, petitioner became eligible for parole. Petitioner received a parole hearing on December 17, 1974. At the close of that hearing, petitioner was advised that the examiner panel of the United States Board of Parole would recommend that his case be heard as an original jurisdiction matter pursuant to 28 C.F.R. § 2.17.[2] As a result, the matter was referred to the Regional Director of the National Board of Parole. On February 11, 1975, the Regional Director voted to deny parole to petitioner. Petitioner appealed this determination to the United States Parol Commission pursuant to 28 C.F.R. § 2.27. The Commission affirmed the denial of parole on April 14, 1975.

Thereafter, petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241.

---

cause of his association with organized criminal activity. Category No. 2 provides:

2. Offense and Prior Record. Cases where official investigative reports show that an offender was involved in sophisticated criminal activity of an organized nature, or was a close or frequent associate of individuals involved in organized criminal activity.

On April 7, 1976, Bureau of Prisons Policy Statement No. 7900.52 was promulgated which established a Central Inmate Monitoring System. The Central Inmate Monitoring System altered the special offender designation process in two ways:

a. Association with "Organized Crime," is not *per se* a rationale for designating a case as a Central Monitoring Case, although it may be that some offenders known to have been involved in Organized Crime will be so designated for other reasons. (See paragraph 3.)

b. Specific procedures are delineated to assure that inmates are informed of a Central Monitoring Case designation and given an opportunity to provide additional information to be considered. (See page 3.)

Petitioner was not processed under the Central Inmate Monitoring System. The new procedure does not moot the present case since the consequences of a central monitoring case

designation would be equivalent to the consequences of a special offender classification.

2. 28 C.F.R. § 2.17 provides in part:

(a) A Regional Commissioner may designate certain cases for decision by a quorum of Commissioners as described below, as original jurisdiction cases. In such instances, he shall forward the case with his vote, and any additional comments he may deem germane, to the National Commissioners for decision. Decisions shall be based upon the concurrence of three votes with the appropriate Regional Commissioner and each National Commissioner having one vote. Additional votes, if required, shall be cast by the other Regional Commissioners on a rotating basis as established by the Chairman of the Commission.

(b) The following criteria will be used in designating cases as original jurisdiction cases:

\* \* \* \* \* \*

(2) Prisoners whose offense behavior (A) involved an unusual degree of sophistication or planning or (B) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

\* \* \* \* \* \*

Insofar as is relevant, the petition alleged that the original jurisdiction classification which was based on the special offender classification resulted in the denial of parole to petitioner. The petition also alleged that the special offender classification resulted in petitioner not being placed on the Terre Haute farm camp.

In view of the affidavits and documentary matter submitted by the Government, the district court treated the Government's motion to dismiss as a motion for summary judgment. The district court first concluded that the special offender classification did not affect petitioner's opportunity for parole. The court found that although petitioner was designated an original jurisdiction case because his was a "stamped file," [3] petitioner's eligibility for parole was not thereby affected. The district judge stated that designation as an original jurisdiction case did not result in delay of eligibility or application of a more stringent standard. The lower court also found, however, that classification as a special offender adversely affected eligibility for transfers, furloughs, and minimum security programs. The district judge concluded, therefore, that classification as a special offender results in a grievous loss requiring the protection of procedural due process. As relief, the district judge ordered the Bureau of Prisons to give petitioner a due process hearing of the sort required by the Second Circuit in *Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975), within sixty days or cease to utilize the special offender classification.

The Government asserts that the district court erred in concluding that procedural due process is required prior to classification as a special offender. According to the Government, the special offender classification does not result in a deprivation of a liberty or property interest since transfers, furloughs, and minimum security treatment programs are not rights guaranteed to a prisoner by the Constitution, a federal statute or a federal regulation. On the contrary, the Government contends that conditions of confinement are wholly discretionary with the Bureau of Prisons. The Government, also contends that the only effect of the special offender classification is procedural since decisions relating to these prisoners are merely made by a different group of decision makers higher up in the agency. The Government relies on *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), and *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976), *cert. denied*, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117, and asserts that *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976), was erroneously decided.

This court in *Holmes, supra*, found that the special offender classification hinders or precludes eligibility for important rehabilitative programs. The court found that the special offender classification adversely affected an inmate's eligibility for transfer, furlough, parole and participation in community programs. The court held "that such [alteration] created by the special offender classification constitutes a 'grievous loss' . . . and, therefore, requires the basic elements of due process." *Holmes*, 541 F.2d at 1251. The court distinguished *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montayne v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), as follows:

> The nature of Holmes' interest in furlough and parole also differs from the state prisoners' interest in preventing transfer in *Meachum* and *Montayne*. Unlike transfer in which the Court held the prisoners possessed no interest once duly convicted, parole and furlough are held out as rehabilitative programs by the Bureau of Prisons. Guidelines have been promulgated to aid officials in the

---

**3.** Petitioner's file was stamped pursuant to Bureau of Prisons Policy Statement No. 7900.47 which provides in part:

> If designated a Special Offender, an inmate may not be transferred or participate in community programs without prior approval

from the Central Office. A stamped notation of this restriction should be placed on the front of the inmate's central file jacket in the institution and on the BP–5 in the Central Office.

exercise of their discretion. While there may exist no right to furlough or parole as there exists no right to incarceration in a particular prison, the extension to prisoners by established prison policy of the opportunities of parole and furlough, constitutes a cognizable benefit to prisoners. No such cognizable benefit was bestowed upon the prisoners in *Meachum* or *Montayne* and we do not read those cases to eliminate due process where cognizable benefits have been established by prison policy itself and eligibility for the benefits is precluded or significantly reduced by the occurrence of a specified event, that is, the special offender classification.

*Holmes,* 541 F.2d at 1252–53.

In *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Court ruled that a parolee imprisoned for a crime committed while on parole is not entitled to a due process hearing promptly on the issuance of a parole violator warrant and detainer. One of the arguments advanced by petitioner in *Moody* was that protected liberty interests in both length and conditions of confinement were disregarded since the outstanding detainer adversely affected petitioner's classification status. The Court rejected petitioner's argument as follows:

Petitioner also argues that the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs. We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano,* . . . for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

*Moody,* 429 U.S. at 88 n.9, 97 S.Ct. at 279.

Thus, the Court in *Moody* stated that even though an outstanding detainer may adversely affect prison classification and qualification for rehabilitative programs, a prisoner has no statutory or constitutional entitlement in classification and rehabilitative programs sufficient to invoke due process. *Moody,* therefore, undercuts the rationale of *Holmes.*[4] Although, as we have found in *Holmes,* classification as a special offender may hinder or preclude eligibility for rehabilitative programs, a prisoner according to *Moody* does not possess sufficient statutory or constitutional entitlement in his classification or eligibility for institutional programs to trigger due process protection. Absent such entitlement, the fact that the interests of a prisoner are adversely affected and that a grievous loss is suffered does not warrant constitutional protection.[5] The mere extension to prisoners of institutional programs by established

---

4. Petitioner argues that the relied upon language in footnote 9 in *Moody* is unnecessary to the court's decision and is only dicta. See *Kastigar v. United States,* 406 U.S. 441, 454–5, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Petitioner contends, therefore, that *Moody* does not compel this court to overrule *Holmes.* We do not agree, however, that the language in footnote 9 was unnecessary to the court's decision. See *Shelton v. Taylor,* 550 F.2d 98, 101 (2d Cir. 1977); *Hicks v. United States Board of Paroles and Pardons,* 550 F.2d 401, 404 (8th Cir. 1977). Even if we assume that footnote 9 is dicta, we would nonetheless find the language in that footnote to be persuasive.

5. This analysis is supported by the court's disposition of *Jones v. Johnston,* 175 U.S.App.D.C. 151, 534 F.2d 353 (1976), vacated and remanded *sub nom. Reed v. Byrd,* 429 U.S. 995, 97 S.Ct. 520, 50 L.Ed.2d 606. The court of appeals in *Jones* after examining the competing interests of a prisoner and the Government concluded that due process requires a prompt parole revocation hearing upon issuance of a parole violator warrant and detainer. In reaching this conclusion, the appellate court pointed to the following interests of a prisoner which are adversely affected by the outstanding detainer: 1) accuracy in the determination of whether parole should be revoked; 2) uncertainty as to his future; 3) prejudice from a detainer which can result in a custody classification that hinders access to educational or rehabilitative programs; and 4) the possibility that a detainer would lessen the chances for securing parole.

prison policy is, therefore, not a sufficient basis after *Moody* to invoke due process.[6]

Thus, we must overrule our decision in *Holmes* insofar as we stated in that case that procedural due process applies to classification as a special offender because the classification adversely affects an inmate's eligibility for transfers, furloughs, and minimum security programs.[7]  Accordingly, the judgment by the district court is hereby reversed.  Because of our ruling, we need not consider the additional arguments raised by the Government.[8]

Despite the lower court's finding that a prisoner's interest in institutional programs and classification are adversely affected by the outstanding detainer, the court vacated and remanded the case in light of *Moody*. Thus, absent constitutional or statutory entitlement, a due process hearing is not required. See also *Confederation of Police v. City of Chicago*, 547 F.2d 375 (7th Cir. 1977).

**6.** For the same reasons, *Moody* also undercuts the Second Circuit's opinion in *Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975). As in *Holmes,* the court in *Cardaropoli* found that due process requires a hearing prior to imposition of the special offender classification because the classification hinders or precludes eligibility for rehabilitative programs. In light of *Moody*, hindering or precluding a prisoner's opportunity to engage in institutional programs is not enough to warrant a due process hearing.

See *Shelton v. Taylor*, 550 F.2d 98 (2d Cir. 1977).

**7.** By so holding, we do not mean to express disapproval of the other aspects of our decision in *Holmes*. Specifically, we express no opinion concerning our holding in *Holmes* that procedural due process applies to classification as a special offender because of an adverse effect on eligibility for parole. That question is not now before this Court since neither party challenges the district judge's ruling that classification as a special offender does not affect eligibility for parole.

**8.** This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *in banc* on the question of partially overruling a prior decision of this Court, *Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976).