**UNITED STATES, Appellee,**

v.

**Private (E–1) Donald D. COWLES, Jr., SSN 263–37–1951, United States Army, Appellant.**

**SPCM 16442.**

U. S. Army Court of Military Review.

19 April 1982.

---

Captain Donna L. Chapin, JAGC, argued the cause for the appellant. With her on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain Joseph A. Russelburg, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before FULTON, Senior Judge, and CLAUSE and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

CLAUSE, Judge:

Appellant was convicted, pursuant to his plea, by a special court-martial, judge alone, of larceny. He was sentenced to a bad-conduct discharge, confinement at hard labor for two months and forfeiture of $265.00 pay per month for two months. The convening authority approved the sentence.

During the sentencing phase of the trial the government offered into evidence Prosecution Exhibit 4, a Record of Proceedings under Article 15, UCMJ. The defense objected on the grounds that the signature thereon "was not legible." The military judge questioned the appellant as to whose signature appeared at blocks 4 and 7. After appellant acknowledged that he had checked the appropriate blocks and signed thereon, the exhibit was admitted. Appellant alleges that the military judge erred by eliciting information from the appellant which made Prosecution Exhibit 4 admissible.

In *United States v. Spivey*, 10 M.J. 7 (C.M.A.1980) a majority of the United States Court of Military Appeals held that even over defense objection "neither Article 31 nor the Fifth Amendment would shield an accused from answering questions designed to establish the admissibility of records of proceedings under Articles 15 and 20 of the Code." [1]  *See also United States v. Mathews*, 6 M.J. 357 (C.M.A.1979) and *United States v. Barlow*, 9 M.J. 214 (C.M.A.

---

1. Chief Judge Everett in his concurring opinion stated he would limit the rule to cases where a guilty plea was entered because of the waiver inherent in pleas of guilty, however, where there is a plea of not guilty and suitable objection, he would hold that "an accused is entitled to remain mute about any matter pertinent to the determination of guilty or to his sentence."

1980), where no objection to admission was made. Although recognizing the holding in *Spivey*, appellant contends that the recent Supreme Court decision in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) necessarily invalidated the procedure approved in *Spivey* and used by the military judge in this case. We do not agree.

In *Smith* the Supreme Court concluded that the Fifth Amendment's prohibition against compelling a person to be a witness against himself in a criminal case does, in appropriate circumstances, apply to the penalty phase of a criminal trial.[2] It is important to note, however, that *Smith* was a capital case and the significance of this fact is apparent throughout the opinion. Smith was convicted of felony-murder. As a prerequisite to imposition of the death penalty, it was incumbent upon the State to demonstrate that the defendant would probably constitute a continuing threat to society. To establish this element, the State converted the psychiatrist who had conducted the pretrial competency examination of the defendant into a "surprise" prosecution witness, its only witness on sentencing, and elicited from him testimony that was extremely damaging to the defendant on this critical issue. The Supreme Court ruled that the admission of such testimony, for the purpose of demonstrating an element of proof statutorily required for imposition of the death penalty, "*[i]n these distinct circumstances,*" violated the Fifth Amendment, since the defendant had not been warned before the psychiatric examination (which occurred while he was in custody) that he had a right to remain silent and that any statement which he made could be used against him at the sentencing proceeding. (Emphasis added). The Court reasoned that "the availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court concluded its discussion of the Fifth Amendment as follows:

2. The Court also found a violation of the Sixth Amendment rights in that the defendant had

These safeguards of the Fifth Amendment privilege were not afforded respondent and, thus, his death sentence cannot stand.[13]

[Note] 13 Of course, we do not hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination.

■ It is clear from the foregoing that *Smith* does not establish a per se rule. Consequently, examination of the purpose and procedure utilized in the instant case is required. The military judge's inquiry concerned only the administrative regularity underlying an official record of past military conduct. Appellant's statements were not incriminating since he answered only that he had foregone the right to a court-martial and the right to appeal his nonjudicial punishment. The Article 15 record did not have the effect of escalating the maximum punishment that could be imposed and was simply an indication of his past professional performance as a member of the military.

■ The restrictions imposed by the Court of Military Appeals on admission of disciplinary proceeding during sentencing were apparently designed as prophylactic measures to insure that appellant's statutory and regulatory rights at these proceedings were afforded. It is not unusual, therefore, that the court would likewise provide that assurance that his rights had been protected could be obtained from the accused himself by the military judge. Relying on the principles established in *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) and *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court fashioned the procedure utilized in this case.

The Court of Military Appeals noted that their approach "infringed upon no constitutional rights of an accused where the inquiry involved no evidence of another crime." Nor does it infringe on the consti-

not been afforded the right to counsel during the interview with the psychiatrist.

734

tutional rights set forth in *Smith.* As noted in *Smith,* the Fifth Amendment privilege depends on the nature of the statement or admission and the exposure which it invites. Nowhere in the majority opinion in *Smith* does the Court discuss or refer to its opinions in *Roberts* or *Tucker* and it is expressly noted that *Smith* did not apply to "all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination."[3] We are satisfied that the procedure utilized by the military judge in the instant case is still within those authorized.[4]

■ Appellant alleges that the convening authority erroneously applied partial forfeitures to his allowances. We agree and will correct this error in our decretal paragraph.

The findings of guilty and the sentence are affirmed. However, so much of the convening authority's action as purports to apply the partial forfeitures to allowances (as distinguished from pay) is in error and is void. The forfeitures will apply to pay only. *United States v. Gordon,* 7 M.J. 869, 872 (A.C.M.R.1979).

Senior Judge FULTON and Judge COHEN concur.

■

---

**3.** Justice Rehnquist cites *Roberts v. United States, supra,* in his concurring opinion. He expresses doubt that Smith's Fifth Amendment right was involved and would dispose of the case on the basis of the Sixth and Fourteenth Amendments only.

**4.** The examination by the military judge in this case occurred 18 days before the Supreme Court's decision in *Smith.* In view of our conclusion as to its impact on the procedure in question we need not consider the government's contention that even if *Smith* is applicable, it should not be applied retroactively to cases tried before the decision. In *Battie v. Estelle,* 655 F.2d 692 (1981), the Fifth Circuit Court of Appeals gave *Smith* retroactive effect.

We have likewise not considered whether appellant's guilty plea may have constituted a waiver of his Fifth Amendment rights. See Chief Judge Everett's concurring opinion in *Spivey.*

We have, however, considered the case of *United States v. Sauer,* 11 M.J. 872 (N.M.C.M. R.), *certified for review,* 12 M.J. 86 (C.M.A. 1981), which takes a contrary view to that expressed herein, but we believe that it gives too broad an interpretation to *Smith.* As was noted in *Battie v. Estelle,* 655 F.2d 692 (1981) at 698 n.10—

Smith only held the Fifth Amendment privilege applicable to the sentencing stage of a capital trial in Texas because the State of Texas must prove a capital defendant's future dangerousness as an issue separate and distinct from proof of his guilt. The applicability of the privilege to mandatory or discretionary sentencing procedures not requiring proof of such an additional prerequisite to impose a criminal punishment raises different questions not necessarily resolved by *Smith.*