## UNITED STATES

v.

**Airman First Class Lawrence P. WORDEN, FR 328–60–3882, United States Air Force.**

**ACM 24031.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Jan. 1983.

Decided 8 Feb. 1984.

---

Appellate Counsel for the Accused: Colonel George R. Stevens, Colonel Leo L. Sergi, and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

Tried before a general court-martial with members, the accused was convicted pursuant to his pleas of three specifications of transferring lysergic acid diethylamide (LSD) and single specifications of use and possession of that same substance in violation of U.C.M.J., Article 92, 10 U.S.C. § 892. His approved sentence extends to a bad conduct discharge, confinement at hard labor for eighteen (18) months, forfeiture of two hundred seventy-five dollars ($275.00) per month for two (2) years, and reduction to airman basic.

We here discuss all five errors assigned by the accused.

### I

We begin by acknowledging the correctness of the accused's assertion that the adjudged partial forfeitures may not be applied against allowances. M.C.M., 1969 (Rev.), paragraph 126h(2).[1] Accordingly,

---

1. Despite the clear language of M.C.M., 1969 (Rev.), paragraph 126h(2), and repeated judicial reminders concerning it, *see United States v. Kiddo,* 16 M.J. 775 (A.C.M.R.1983); *United States v. Humphrey,* 14 M.J. 661 (A.C.M.R. 1982); *United States v. Mahone,* 14 M.J. 521 (A.F.C.M.R.1982); *United States v. Cowles,* 13 M.J. 731 (A.C.M.R.1982); *United States v. Minor,* 11 M.J. 608 (A.C.M.R.1981); *United States v. Krampf,* 9 M.J. 593 (A.F.C.M.R.1980); *United States v. Jackson,* 8 M.J. 511 (A.C.M.R. 1979); *United States v. Gordon,* 7 M.J. 869 (A.C.M.R.1979); *United States v. Terrell,* 4 M.J. 720 (A.F.C.M.R.1977); *United States v. Carter,*

we may not affirm that portion of the convening authority's action that purports to do this.

## II

The accused next asserts that the accused's conviction for possessing LSD should be dismissed because it is multiplicious for findings purposes with his conviction for use and two of his three convictions for transfer.

According to a stipulation of fact introduced in support of the accused's confession at trial, the accused, on the evening of 17 July 1982, obtained at least two sheets containing "hits" of LSD from his supplier. He cut a small portion off of one of these sheets (this portion contained only 4 hits of LSD) and gave it to an airman identified as Jack. A few minutes later the accused transferred a second complete sheet of LSD (containing a full 100 hits) to a second airman in exchange for one hundred eighty dollars ($180.00). These transfers constituted the two transfers that the accused now contends were multiplicious for findings purposes with his conviction for possession. Following this second transfer, the accused drove to a local pizzeria with several airmen. While at the pizzeria, he went out to his car and ingested some of the remaining LSD which he possessed. This ingestion constituted the use conviction that the accused now contends was multiplicious for findings purposes with his possession conviction.

Although the stipulation of fact did not specify the number of hits originally contained on the sheet of paper from which the accused cut four hits, the accused initially testified during his providency inquiry that following both transfers, he still had ten hits of LSD. (He later testified that he was not sure the number remaining was ten.) He also testified that he only consumed a portion of the hits that remained (two) when he ingested LSD at the pizzeria. Accordingly, we conclude that following the

49 C.M.R. 636 (A.F.C.M.R.1974); *United States v. Culver,* 44 C.M.R. 564 (A.F.C.M.R.1971), the prevalence of this unprofessional administra-

two transfers he made on the 17th of July and his subsequent use on that same date, he still possessed between eight (if his initial testimony was correct) and ninety-four (assuming the sheet from which he first cut four hits and then ingested two was the same size as the other sheet he had obtained from his supplier) of his initial cache of LSD.

■ Possession of the remainder of a cache of drugs is not multiplicious for either findings or sentencing purposes with the offenses of transfer or use of a smaller portion of that cache. *United States v. Ansley,* 16 M.J. 584 (A.C.M.R.1983); *United States v. DeSoto,* 15 M.J. 645 (N.M.C.M.R. 1982); *United States v. Chisholm,* 10 M.J. 795 (A.F.C.M.R.1981).

As a matter of expediency, government counsel at trial took the position that the possession specification was multiplicious for sentencing purposes with those alleging transfer and use on the same day. Following trial defense counsel's concurrence, the military judge acquiesced. Contrary to appellate defense's assertion, such an acquiescence below has no effect upon this Court's separate determination of whether these specifications are multiplicious for findings purposes. We have determined that they are not multiplicious for findings purposes, and accordingly decline to dismiss the possession specification.

## III

■ Appellate defense counsel, citing *United States v. Tharp,* 49 C.M.R. 233 (A.F. C.M.R.1974) (to which they might have added *United States v. McBride,* 50 C.M.R. 126 (A.F.C.M.R.1975)), next assert that we must set aside the accused's bad conduct discharge because the military judge, complying with a request from trial defense counsel, instructed the court panel that "a recommendation, by the court, for an administrative discharge . . . if based on the same matters as the sentence, is inconsistent with

tive error appears to be on the increase in Air Force trial records. It requires command attention both in training and in the field.

the sentence of a punitive discharge as a matter of law." According to the accused, this instruction was an erroneous statement of law which, in accordance with the dictum expressed in *United States v. McLaurin,* 9 M.J. 855, 858 n. 5 (A.F.C.M.R.1980), precluded the sentencing authority from contemporaneously recommending that an administrative discharge be substituted for a punitive discharge.

While as indicated by our *McLaurin* footnote, we consider the semantics of this particular expression of valid military law to be archaic in light of the language we utilized in our *Tharp* and *McBride* decisions, we neither stated nor meant to imply that its use constitutes error. Indeed, following *Tharp* and *McBride,* in *United States v. Welch,* 1 M.J. 1201 (A.F.C.M.R.1976), we specifically sanctioned its continued use as a valid court panel instruction.

Contrary to the accused's contention on appeal, footnote 5 of *McLaurin* simply expresses this Court's desire that military judges, when issuing sentencing instructions, not use a particular semantical expression of what is, nevertheless, an indisputably valid expression of existing military law.[2] It does not impact upon that expression's continued validity.

## IV

■ In his fourth assertion of error, the accused claims that as a result of a 133 day period taken by his convening authority to approve his adjudged sentence, he was prejudicially denied an early opportunity for parole.

In support of this allegation, the accused argues that had the government processed his record of trial more diligently, the convening authority could have completed his action earlier. Since this action's designation of the United States Disciplinary Barracks (USDB) as the accused's place of confinement was a condition prerequisite to adding the accused's name to the bottom of a list of prisoners awaiting transfer to that confinement facility, if the convening authority had completed his action earlier, the accused's name could have been added to that list earlier. Had this been done, the waiting list might, at the time the accused's name was added, have been short enough that the accused could have eventually been confined there.

Instead, because the accused's trial record was not diligently processed, the convening authority's action was not completed until the list of prisoners for the USDB was so long as to preclude eventual confinement in accordance with the terms of that document. Acting pursuant to the authority of an administrative message that was issued by the Air Force Judge Advocate General's Special Assistant for Clemency and Rehabilitation Matters on 6 May 1983, to alleviate the length of time prisoners were being held at local confinement facilities while awaiting transfer to the USDB, the accused's jailors changed his designated place of confinement from the USDB to Fort Lewis, Washington, where the accused was transferred on 26 August 1983.

According to the accused, had his record of trial been processed with reasonable diligence, he might have been confined at the USDB rather than at Fort Lewis. Had this occurred, he would have been eligible to apply for a parole hearing at any time following either his arrival at the USDB or 6 July 1983, whichever date was the later. *See* Air Force Regulation 125–23, Parole of Air Force Prisoners from Disciplinary Barracks, 17 November 1976, paragraph 1–5a(1). Because the Government did not proceed with reasonable diligence in processing his record of trial, however, the accused was eventually incarcerated at Fort Lewis, where he was not eligible for a parole hearing until 6 October 1983. The accused asserts, therefore, that he was prejudiced by the government's failure to diligently process his record of trial, and demands that charges against him be dismissed in accordance with the dictates of

---

**2.** *See United States v. Keith,* 22 U.S.C.M.A. 59, 46 C.M.R. 59 (1972); *United States v. Welch,* 1 M.J. 1201 (A.F.C.M.R.1976); *United States v.* *King,* 1 M.J. 657 (N.C.M.R.1975); Department of the Army Pamphlet No. 27–9, Instruction 2–50 (1982).

*United States v. Banks,* 7 M.J. 92 (C.M.A. 1979) and *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982).

Since no explanation is provided by this record of trial as to why it took 133 days for the Government to process this document to the point that the accused's convening authority could act on this case, we must carefully examine the accused's claim of prejudice. For, if the accused can, in fact, establish that he was prejudiced as a result of this *prima facie* failure by the government to diligently process his record of trial, then the charges upon which his conviction is based must be dismissed. *United States v. Banks, supra.*

While the accused's effort to demonstrate prejudice, here, is most certainly imaginative (the Court of Military Appeals had already granted upon this issue in *United States v. Harder,* 16 M.J. 415 (C.M.A.1983), prior to remanding that case to this Court where it was decided on other grounds), the "prejudice" he alludes to stems from the natural administrative consequences of his initial sentence to confinement, rather than from a post-trial delay in processing his case.

The determination of where, under what conditions, and with what privileges a sentenced prisoner serves his period of confinement, is a regulatory one, in large part determined by prison administrators who have day-to-day experience in the problems that arise in the operation of corrections facilities. *Bell v. Wolfish,* 441 U.S. 520, 549, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979). "So long as rules of prison management are not so unreasonable as to be characterized as vindictive, cruel or inhumane, so long as they are necessary or reasonable concomitants of imprisonment, so long as regulations do not involve punishment or restraints intolerable in fundamental

**3.** *See* Air Force Regulation 125–23, Parole of Air Force Prisoners from Disciplinary Barracks, 17 November 1976, paragraph 1–5a(1).

**4.** The medium utilized for this request was the accused's *Goode* response to the Staff Judge Advocate's review. *See United States v. Goode,* 1 M.J. 3 (C.M.A.1975). The action re-

fairness and so long as rules are not exercised in such manner as to constitute clear arbitrariness or caprice, no constitutional rights are infringed."
*Breeden v. Jackson,* 457 F.2d 578, 580–581 (4th Cir.1972).

Should a sentenced prisoner desire to allege an infringement of his constitutional rights based upon his treatment while in prison, he should raise the issue via an extraordinary writ. *See generally Bell v. Wolfish, supra; Altizer v. Paderick,* 569 F.2d 812 (4th Cir.1978); *Shelton v. Taylor,* 550 F.2d 98 (2d Cir.1977); *Sellers v. Ciccone,* 530 F.2d 199 (8th Cir.1976); *Breeden v. Jackson, supra.* It is not an issue properly contested in ordinary appellate proceedings because it relates neither to the validity of his conviction nor his approved sentence. *United States v. Williams,* 14 M.J. 994 (N.M.C.M.R.1982); *United States v. Powis,* 12 M.J. 691 (N.M.C.M.R.1981).

Furthermore, even had the accused's case been finalized within a period of time that reflected reasonable diligence on the government's part, and even if he had gained immediate entry to the USDB, his chances at obtaining clemency would have been no better than they were as a result of the regulatory consequences of the post-trial delay. For had both these contingencies occurred, the accused would have been presented with but a single opportunity to be considered for probation on 6 July 1983, after 6 months confinement,[3] rather than a first opportunity on 10 May 1983, after 4 months confinement, to request his convening authority grant him immediate clemency relief in lieu of a 6 July 1983 probation hearing,[4] a second opportunity on 23 August 1983, after 7 and one-half months confinement, to petition his convening authority for remission of the remainder of his sentence because he had in fact been ineli-

quested both here and in footnote 5, *infra,* could have been taken by the convening authority pursuant to U.C.M.J., Article 64; *United States v. Siders,* 15 M.J. 272 (C.M.A.1983); *United States v. Black,* 16 M.J. 507 (A.F.C.M.R. 1983); *United States v. Schmidt,* 13 M.J. 934 (A.F.C.M.R.1982).

gible for that same 6 July 1983 probation hearing,[5] and a third opportunity on 6 October 1983, after 9 months confinement, to formally submit an application for probation to a prisoner disposition board convened at Fort Lewis.[6] When this description of events is combined with the fact he was not recommended for parole as a result of his 6 October 1983 application, 3 months after the hearing deprivation of which he now complains,[7] it is clear that any prejudice which stemmed from the accused's deprivation of a 6 July parole hearing, is so illusory, speculative and remote, as to make his suggestion that the charges, here, be set aside, positively untenable. Even had the accused properly presented this issue to us, his interest in a 6 July probation hearing was simply too negligible to provide a "due process" basis for any assertion that his constitutional rights had been infringed. *Bryant v. Carlson, supra; Altizer v. Paderick, supra; Shelton v. Taylor, supra; Breedon v. Jackson, supra.*

Accordingly, not inconsistent with the rationale expressed by either the Army Board of Review in *United States v. Silver,* 34 C.M.R. 608 (A.B.R.1963) or the Navy-Marine Court of Military Review in *United States v. Powis* and *United States v. Williams,* both *supra* (*Cf., United States v. Hannan,* 17 M.J. 115 (C.M.A.1984), *United*

*States v. Surry,* 6 M.J. 800 (A.C.M.R.1978); *contra, United States v. Hawkins,* 49 C.M.R. 57 (A.C.M.R.1974)), we conclude that the accused is not entitled to any relief as a result of the excessive post-trial processing delay in this case.

## V

Finally, pursuant to appellate counsel's assertion of error, and in accordance with *United States v. Allen,* 17 M.J. 126 (C.M.A. 1984), we order that the accused be provided with an administrative credit for that time he spent in pretrial confinement.

That portion of the convening authority's action which purports to apply partial forfeiture of pay to allowances, rather than to pay, alone, is set aside. The findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge and FORAY, Senior Judge, concur.

---

5. Following passage of the accused's first 6 months confinement, all of which was served locally, either at a base confinement facility or a local civilian jail, his counsel petitioned the convening authority, pointing out that had the accused been confined for this period at the USDB he would have already been eligible to meet a parole board. The petition asked that the convening authority review the accused's record, in lieu of action by a parole board, and that he exercise his clemency power to remit the remainder of the accused's sentence to confinement.

6. This board was convened pursuant to a message initiated by the Special Assistant for Clemency and Rehabilitation to The Judge Advocate General on 29 September 1983, which,

although lacking an appropriate citation of authority, amounted to a *de facto* modification to A.F.R. 125–23. *See* HQ USAF WASH DC//JAJR message, Datetime group, 291335Z Sep 83, Subject: Parole and Clemency Consideration for Prisoners not in USDB.

7. According to an affidavit from Myron L. Birnbaum, Special Assistant for Clemency and Rehabilitation, Office of the Judge Advocate General, filed by the government, "I have been further requested to ascertain the recommendation of the Disposition Board convened on 6 October 1983 at Fort Lewis, Washington, in the case of Airman Lawrence P. Worden. I have been reliably advised that the report of the Board recommends neither clemency nor parole."